AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2020 SEP -3 PM 11: 50

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* 1048 Whitethorne Avenue, Columbus, Ohio 43223 | Case No. 2:20-mj-611 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
1048 Whitethorne Avenue, Columbus, Ohio 43223 and the curtilage is described as a single story, single family residence with brownish gray siding on the front of the residence with white trim, north and south sides have blue and brown siding on the east side of Whitethorne Avenue. The curtilage containing outbuilding and vehicles.
located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:
Property that constitutes evidence of the commission of and/or property designed or intended for use or which is or has been used as a means to commit criminal offenses as described in Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Possession with the Intent to Distribute Fentanyl |

The application is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.
☐ Delayed notice ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DEA Special Agent Anthony Martin
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 2, 2020

Elizabeth A. Preston Deavers
United States Magistrate Judge

City and state: Columbus, Ohio (Franklin Co.)

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANTS

I, Anthony D. Martin, (hereafter referred to as affiant) being duly sworn depose and state:

I am a Special Agent of the Drug Enforcement Administration (DEA) assigned to the Detroit Field Division, Columbus District Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C.§ 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C.§ 2516. Your affiant has been employed by the DEA since June, 2018. Your affiant is empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of Title 21 U.S.C. § 878.

Prior to being employed by the DEA your affiant was employed by the Ohio State Highway Patrol from September, 2012 until June, 2018. During this time, your affiant has accumulated the following training and experience:

(a) I graduated from the DEA Academy located at the FBI Academy, Quantico, Virginia. I received approximately 16 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques and money laundering investigations.

(b) During the course of my law enforcement career I have had experience in debriefing defendants; interviewing participating witnesses, cooperating individuals and other persons who have personal knowledge and experience regarding the amassing, spending, conversion, transportation, distribution, and concealment of records and proceeds of trafficking in controlled substances.

(c) As a DEA agent an Ohio State Trooper, I have participated in the execution of numerous search warrants at the residences and businesses of narcotics traffickers, safe houses, crack houses, and have participated in numerous arrests for drug related offenses. I have drafted numerous search warrants.

(d) As a DEA agent, I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine and other controlled substances as defined in 21 U.S.C.§801.

(f) Through my experience as a law enforcement officer, I am aware that drug traffickers often possess firearms. Drug traffickers possess firearms in order to protect themselves, the controlled substances that they possess, and the proceeds collected from the sale and distribution of controlled substances.

() During the course of my law enforcement career, I have completed the following training; Ohio State Highway Patrol Training Academy (February 2013), Commercial Motor Vehicle Criminal Interdiction Training (December 2013), DEA's Basic Narcotic Investigator course (September 2016), Motor Vehicle Criminal Interdiction Association/El Paso Intelligence Center training (August 2016, August 2017), Ohio Narcotics Association Regional Coordinating Officers training (October 2016, October 2017), Ohio Narcotics Association Regional Coordinating Officers Basic Drug/Undercover Investigations course (April 2017), Basic Clandestine Lab (September 2017)

The facts and information contained herein are based on my personal knowledge and experience, that of other law enforcement personnel, surveillance operations, and from persons with knowledge regarding relevant facts and witnesses. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this investigation.

## PROBABLE CAUSE

1. Since April, 2020, DEA Columbus has been investigating the drug trafficking activities of Abel PARDO RODRIGUEZ, Gilberto FLORES, Jovanni AGUIAR VIERA and Willis CRUZ (PARDO RODRIGUEZ Drug Trafficking Organization (DTO). PARDO RODRIGUEZ and FLORES have been identified as facilitators, possessors and distributors of large amounts of fentanyl, and heroin in the Columbus, OH area. AGUIAR VIERA has been identified as a narcotics courier, possessor and distributor of large amounts of fentanyl, and heroin in the Columbus, OH area. CRUZ has been identified as an aftermarket hidden compartment builder to conceal large amounts of fentanyl, and heroin in route to the Columbus, OH and eastern United States area. Your affiant, or other investigators assigned to this case, have interviewed a confidential sources (CS), regarding the PARDO RODRIGUEZ DTO. The CS's information has been corroborated by your affiant, and or other investigators assigned to this case. This corroboration was achieved through a combination of a traffic stop, parcel interdictions, physical surveillance, geo location data, administrative subpoenas and various other sources.

2. The CS indicated that PARDO RODRIGUEZ was working in the Columbus, Ohio area and distributing large amounts of narcotics. Information gained from various sources during the course of the investigation indicated that the PARDO RODRIGUEZ DTO receives narcotics via parcels and vehicles that contain aftermarket hidden compartments and the narcotics are being sent from southern California to Columbus, Ohio and various parts of North Carolina.

3. On or about April 1, 2020, law enforcement seized a parcel (Parcel #1) from the United Parcel Services (UPS Parcel #1 was sent from a Jose Osvno from a UPS store in Gardena California to a Gil Flores to 2810 Citizens Place, Columbus, Ohio 43232. Parcel #1 was found to contain approximately 227 grams of suspected heroin. Your affiant believes Gil Flores to be short for Gilberto FLORES and that FLORES was the intended receiver of Parcel #1.

4. In June 2020, information gained from various sources during the course of the investigation indicated that the PARDO RODRIGUEZ DTO had a vehicle with an aftermarket hidden compartment and that members utilize it to transport narcotics from southern California to the Columbus, Ohio area. Investigators observed PARDO RODRIGUEZ, FLORES, and AGUIAR VIERA driving and associating with a 2010 Mercedes Benz E320 bearing California registration 8HLT757. Investigators further observed PARDO RODRIGUEZ, FLORES, and AGUIAR VIERA at CRUZ's residence with the 2010 Mercedes Benz E320. CRUZ appeared to be working on and near the right rocker panel. During this same time information gained from various sources during the course of the investigation indicated that PARDO RODRIGUEZ was unhappy with the concealment of the aftermarket hidden compartment on one of the PARDO RODRIGUEZ DTO's vehicles and was having work done to better conceal it. Your affiant believes CRUZ works for the PARDO RODRIGUEZ DTO and is the mechanic who was working to better conceal the aftermarket hidden compartment on the 2010 Mercedes Benz E320.

5. Investigators further observed PARDO RODRIGUEZ, FLORES and AGUIAR VIERA making multiple visits to convenient stores that offer electronic money wire services. PARDO RODRIGUEZ, FLORES and AGUIAR VIERA were observed taking turns going into the stores for short periods of time and returning to their vehicle with only receipts in their hands. Your affiant knows that it is a common practice of DTO's to send money via electronic money wire services in amounts under $1,000.00 to avoid law enforcement detection. Your affiant believes PARDO RODRIGUEZ, FLORES and AGUIAR VIERA were sending money in the form of a payment or a down payment in preparation for a shipment of narcotics.

6. Staring in the end of June, 2020 through present, investigators have observed PARDO RODRIGUEZ, FLORES, and vehicles know to be driven by them at 1048 Whitethorne Avenue, Columbus, Ohio 43223 (**Target Residence**). Geo location data has also showed phones known

to be possessed by PARDO RODRIGUEZ staying at the **Target Residence** on a nightly basis indicating to investigators that PARDO RODRIGUEZ resides as the **Target Residence**.

7. On or about June 25, 2020, law enforcement conducted a traffic stop on AGUIAR VIERA in the 2010 Mercedes Benz E320 while eastbound on Interstate 40 near mile post 25 in Memphis/Shelby County Tennessee. The traffic stop resulted in the seizure of approximately 4950 grams of suspected fentanyl, approximately 500 grams of heroin, 2465 pills believed to be Oxycodone in an aftermarket hidden compartment in the right rocker panel. Your affiant believes that AGUIAR VIERA was acting under the PARDO RODRIGUEZ DTO and transporting their narcotics to a purchaser in the North Carolina area.

8. Just prior to July 24, 2020, information gained from various sources during the course of the investigation indicated that the PARDO RODRIGUEZ DTO was expecting a parcel to arrive in the mail that contained narcotics.

9. On or about July 24, 2020, law enforcement seized a parcel (Parcel #2) from FedEx. Parcel #2 was sent from Jose Reyes Osuna at 648 West 92nd Street Apartment 19, Los Angeles, California 90044 to Jose Partida Firma at 456 Derrer Road, Columbus, Ohio 43204. Parcel #2 was found to contain approximately 953 grams of suspected fentanyl. After the time that Parcel #2 was scheduled to be delivered investigators observed PARDO RODRIGUEZ drive by the residence. Your affiant believes that PARDO RODRIGUEZ was driving by the residence to see if Parcel #2 had been delivered and if it had been, he was going to retrieve it.

10. After Parcel #2 was seized information gained from various sources during the course of the investigation indicated that the parcel that the PARDO RODRIGUEZ DTO was expecting to arrive was seized prior to its arrival. Your affiant believes Parcel #2 was the parcel that the information gained from various sources during the course of the investigation indicated was scheduled to arrive but did not.

11. In mid-August, 2020, investigators observed PARDO RODRIGUEZ loading what appeared to be a laundry basket into one of their vehicle at the **Target Residence**. Investigators then observed PARDO RODRIGUEZ and FLORES at a self-serve remote laundry facility. PARDO RODRIGUEZ and FLORES were later observed returning to their vehicle with what appeared to be laundry detergent and clothes. PARDO RODRIGUEZ and FLORES then returned back to the **Target Residence**.

12. On or about August 26, 2020, law enforcement seized a parcel (Parcel #3) from FedEx. Parcel #3 was sent from Jose Osuna at 648 West 92nd Street Apartment 13, Los Angeles, California 90044 to Manuel Mendoza at 456 Derrer Road. Parcel #3 was found to contain approximately 544 grams of suspected fentanyl. Prior to the expected delivery time of Parcel #3,

investigators observed PARDO RODRIGUEZ park approximately 1.5 blocks south of the residence and park in a way that he could see up Derrer Road toward the residence. Just before the expected delivery time of Parcel #3, investigators observed PARDO RODRIGUEZ, get out of his vehicle and walk up Derrer Road toward the residence. While walking PARDO RODRIGUEZ was looking all around. Your affiant believes PARDO RODRIGUEZ was looking all around to see if law enforcement was watching him before he went to retrieve Parcel #3. PARDO RODRIGUEZ was observed walking around the area in a way that he could occasionally see the residence for approximately 20 minutes prior to returning to his vehicle and departing the area. Your affiant believes that PARDO RODRIGUEZ was watching and waiting to see if Parcel #3 was going to arrive and when it did not arrive as scheduled he departed.

13. On August 28, 2020 Honorable Judge Elizabeth A. Preston Deavers authorized a federal arrest warrants for Abel PARDO RODRIGUEZ, Gilberto FLORES, Jovanni AGUIAR VIERA and Willis CRUZ for being in violation of Title 21 USC 846 Conspiracy to possess with intent to distribute over 400 grams of a mixture or substance containing a detectable amount of fentanyl.

14. From August the beginning of August through September 2, 2020 investigators observed a Chevy Colorado parked at the **Target Residence.** Investigators further observed FLORES depart from the front door and use a key to lock the door.

15. On September 2, 2020 investigators with the Columbus DO arrested PARDO RODRIGUEZ and FLORES. PARDO RODRIGUEZ was arrested outside his residence at 2315 Woodbrook Circle North Apartment C, Columbus, Ohio 43223. PARDO RODRIGUEZ was advised of his Miranda Warning and consented to an interview. Investigators advised PARDO RODRIGUEZ that they knew of the **Target Residence** that FLORES was living there. PARDO RODRIGUEZ nodded his head in agreeance to what the investigators had said.

16. PARDO RODRIGUEZ further consented to the search of his residence. The search resulted in the seizure of over $1,000.00 dollars in cash, one loaded Taurus 9mm handgun, multiple cell phones, a laptop, a thumb drive. Also found but not seized was a money counter, multiple money remitter receipts, wood working tools, a empty scale box, a picture frame with hollowed out sections that contain tubes. Your affiant believes the picture frame was designed and built to conceal narcotics.

17. FLORES was arrested as the result of a traffic stop on him in a Colorado, The same Colorado that had been parked at the **Target Residence.** After FLORES was arrest a trooper with the Ohio State Highway Patrol deployed his narcotics sniffing K9 on the Colorado which resulted in a positive indication to the odor of narcotics coming from the vehicle. A probable cause search of the Colorado resulted in the finding of an aftermarket hidden compartment a tool box in the bed of the truck and a picture frame similar to the one found in PARDO RODRIGUEZ's residence.

18. Your affiant believes Abel PARDO RODRIGUEZ, Gilberto FLORES, Jovanni AGUIAR VIERA and Willis CRUZ are working in conjunction with each other as the PARDO RODRIGUEZ DTO in order distribute large amounts of heroin and fentanyl. Your affiant further believes the PARDO RODRIGUEZ DTO is utilizing the **Target Residence** as a more than just an address PARDO RODRIGUEZ and FLORES reside but also a place where items linked to their DTO would be found.

19. Based on my training and experience and the training and experience of other law enforcement officers involved in this investigation, as well as my knowledge of this investigation, I know the following:

(a) That narcotics traffickers very often place assets in names other than their own and/or use fictitious identification to avoid detection of these assets by government agencies or local law enforcement;

(b) That even though these assets are in other persons' names the narcotics traffickers continues to exercise dominion and control;

(c) That it is common for drug traffickers to maintain multiple premises from which their illegal business is conducted. Drug traffickers often store narcotics, narcotics proceeds and records related to the trafficking of narcotics at their residences and/or businesses and the residence and/or businesses of their relatives and co-conspirators;

(d) That narcotics traffickers must maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing narcotics activities, as well as for paying bills, acquiring assets, and making other purchases;

(e) That it is common for narcotics traffickers to maintain books, records, receipts, notes, ledgers, airline tickets, bus tickets, rental car receipts, receipts relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, purchasing, processing, storage, sale and distribution of drugs, and the collection of its proceeds. That the aforementioned books, records, receipts, notes, ledgers, etc, are maintained where the narcotics traffickers have ready access to them;

(f) That it is common for narcotics traffickers to secrete contraband, proceeds of drug sales, records of drug transactions, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value; and evidence of financial transactions relating to obtaining, transferring, secreting, and spending large sums of money made from engaging in narcotics trafficking activities in secure locations within their residences and/or other locations which they maintain dominion and control over in order that they have ready access to them;

(g) That it is common for persons involved in narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment, and/or expenditure of narcotic proceeds, such as: currency, financial instruments, precious metals and gem stones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, loan records, money orders, bank drafts, cashier checks, bank checks, wire transfers, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences and/or other locations which they maintain dominion and control:

(h) That when drug traffickers amass a large amount of proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits;

(i) That to accomplish these goals, narcotics traffickers utilize, including, but not limited to, foreign and domestic banks and their attendant services, money transmitter agents, check cashing services, real estate agents, securities brokers, accountants, attorneys, business fronts, and otherwise legitimate businesses which generate large quantities of currency;

(j) That narcotics traffickers often utilize electronic equipment such as currency counting machines, telephone answering machines, telephone caller identification boxes, and pagers (digital display beepers) in their drug activities;

(k) That drug traffickers often take or cause to be taken photographs/video tapes of themselves, their associates, their

property, and their products. These traffickers usually maintain these photographs/video tapes in their residences and/or other locations in which they maintain dominion or control;

(l) That the sale of narcotics generates large quantities of United States currency in small denominations (aka, street money);

(m) That it is common for drug dealers to separate their "street money" by denomination and put this currency in rubber banded stacks in varying $1,000 increments to facilitate quick counting;

(n) That narcotics traffickers commonly maintain addresses or telephone numbers in books or papers, which reflect names, addresses, and/or telephone numbers of their suppliers, customers, and other associates involved in their narcotics trafficking organization;

(o) That drug traffickers commonly have in their possession that is on their person, at their residences and/or other locations which they maintain dominion and control, firearms, including but not limited to: handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to: narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. currency;

(p) That drug traffickers commonly use in the possession, dilution, or distribution of said narcotic drugs and non-narcotic controlled substances, including but not limited to adulterants, diluents, packaging, plastic bags, manila envelopes, strainers, measuring spoons, scales, grinders, weights, etc.; and

(q) That the courts have recognized unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in narcotics.

20. Your affiant believes, based on the facts contained in this affidavit, that there is probable cause to believe 1048 Whitethorne Avenue, Columbus, Ohio 43223 is a location used by this drug trafficking organization where records, financial documents, U.S. currency, address books and other items detailed in

## Attachment A

1. Log Books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers relating to the transportation, ordering, purchasing, processing, storage, and distribution of controlled substances, in particular cocaine; all records of income and expenses.

2. Papers, tickets, notices, credit card receipts travel schedules, travel receipts, passports, and/or records and other items relating to travel to obtain and distribute narcotics and narcotic proceeds.

3. Books, records, invoices, receipts, records of real estate transactions, financial statements, bank statements, cancelled checks, deposit tickets, passbooks, money drafts, withdrawal slips, certificates of deposit, letters of credit, loan and mortgage records, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money.

4. Electronic equipment such as currency counting machines, pagers (alphanumeric display beepers), telephone answering machines, telephone caller identification boxes, videocassette and audiocassette tapes, and any stored electronic communications contained therein.

5. Cellular telephones(s) and any stored electronic communication stored therein.

6. United States currency, precious metals, jewelry, gold coins, and financial instruments including, but not limited to stocks and bonds.

7. Photographs, negatives, videotapes, slides, films, undeveloped film and the contents therein, in particular, photographs of co-conspirators, assets, and/or narcotics.

8. Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, and/or fax numbers of co-conspirators, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

9. Indicia of occupancy, residency, rental and/or ownership of the premises described in above or vehicles located thereon, including but not limited to utility and telephone bills, cancelled envelopes, keys, deeds, purchase and/or lease agreements, land contracts, titles, and vehicle registrations.

10. Firearms and ammunition, including but not limited to handguns, pistols, rifles, shotguns, full-automatic weapons, and other weapons and any records or receipts pertaining to said firearms and ammunition.

11. To listen, read, review, develop, print, and convert all electronic media into human readable and viewable form and to make copies or recordings of the data in order to protect and preserve the information.

12. The opening and search and removal, if necessary, of any safe or locked receptacle or compartment, as all or some of the property heretofore may be maintained inside.

13. Scales, electronic scales, paraphernalia, packaging materials, and any other items used for the preparation of controlled substances for sale or re-sale or utilized to store or ingest controlled substances.

14. Schedule I and/or II controlled substances, to wit: Cocaine, Crack Cocaine, Heroin, Marijuana, Methamphetamine, Fentanyl, or any derivative thereof and/or other evidence of illicit drug trafficking unknown at this time.